881 So.2d 281 (2003)
Darrell SWINDLE, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2001-CP-01668-COA.
Court of Appeals of Mississippi.
November 18, 2003.
*282 Darrell Swindle, appellant, pro se.
Office of the Attorney General by Charles W. Maris, attorney for appellee.
EN BANC.

*283 ON MOTION FOR REHEARING

MCMILLIN, C.J., for the Court.
¶ 1. The motion for rehearing is denied. The original opinion is withdrawn, and this opinion is substituted. After pleading guilty to two counts of uttering a forgery in the Circuit Court of Pearl River County without an accompanying sentence recommendation from the State, Darrell Swindle was sentenced to two consecutive terms of fifteen years each, with five years suspended. Swindle subsequently filed a motion for post-conviction relief contending that the sentence was unreasonably harsh under the factual circumstances of the case and that he received ineffective assistance of counsel. We conclude that, as to the guilty pleas themselves, Swindle has shown no entitlement to relief but that, as to the sentences imposed, there were fundamental defects in the procedure that could and should have been raised by defense counsel and which may, therefore, entitle Swindle to relief. We, therefore, reverse the summary denial of post-conviction relief and remand this cause for further proceedings consistent with the terms of this opinion.

I.

Discussion of Relevant Facts
¶ 2. Swindle was indicted for issuing two checks on the account of one Shelia J. Odom when he knew, in fact, that the signatures affixed to the two checks were not those of Ms. Odom. One check was issued to Bill's Quick Stop in the amount of $49.82 and the other was issued to Wal-Mart in the amount of $588.41. According to the indictments, both of the checks were fraudulently issued by Swindle on the same day.
¶ 3. After Swindle agreed to plead guilty to both counts without a recommendation as to sentence from the prosecution, the trial court deferred sentencing for four days. At the sentencing hearing, the only presentation by the defense was Swindle's own assertion to the court that "I've had a drug problem for a while," and that, but for that problem, "I probably wouldn't be standing here right now."
¶ 4. The court offered the opportunity for any victims of the crimes to come forward and speak, but no one presented themselves. Instead, the prosecution indicated that one victim  Shelia Odom  had filed a written victim's impact statement.
¶ 5. It was at that point that the trial court sentenced Swindle to two terms of fifteen years each, with the sentences to run consecutively, then added that "[t]he last five years of that sentence will be served on post-release supervision...."
¶ 6. No appeal was taken from the judgment of sentence; however, approximately eight months after the sentence was pronounced, Swindle filed a pro se motion for post-conviction relief. Having reviewed the contents of Swindle's motion and supporting brief, this Court concludes that a fair interpretation of the issues raised in this proceeding are as follows:
(a) In determining an appropriate sentence, the trial court improperly relied on information in Odom's victim impact statement that was objectionable as being outside the intended scope of such a statement, and the improper information was highly inflammatory in nature. As a result, Swindle contends that his sentence was unconscionably harsh in light of the nature of the crimes themselves.
(b) The proper statutory procedure for introduction of a victim impact statement was not followed, thereby depriving Swindle of the opportunity to rebut damaging and false information contained therein.
*284 (c) The trial court relied on evidence of a prior criminal conviction to justify the length of sentence when, in fact, Swindle had been acquitted of the alleged prior crime.
(d) Swindle received ineffective assistance of counsel because of trial counsel's failure to object to the improper victim impact statement or to provide competent evidence to contradict the trial court's erroneous understanding of Swindle's prior criminal record.
¶ 7. For reasons we will proceed to explain, this Court concludes that issues (a) through (c), insofar as they constitute a direct attack on the length of the sentence imposed on Swindle, are not properly before the Court since all of them could have been raised in a direct appeal from the judgment of sentence. However, the Court further finds that, in the context of the effectiveness of Swindle's representation by counsel as to the sentencing phase only of these two pleas, there is, at the least, sufficient indication of Swindle's right to relief that an evidentiary hearing on the merits of his complaints should be conducted.

II.

Failure to Take a Direct Appeal from the Judgment of Sentence
¶ 8. The law is clear that, even when a defendant pleads guilty to the crime itself, if he is aggrieved as to the sentence imposed by the trial court for any reason cognizable under the law, the defendant is entitled to have the sentence reviewed by a direct appeal. Campbell v. State, 743 So.2d 1050, 1052(¶ 5) (Miss.Ct.App.1999). All of the complaints raised by Swindle directly relating to the manner in which he was sentenced existed immediately at the conclusion of the sentencing hearing and were, thus, appropriate matters for a direct appeal. The Mississippi Uniform Post-Conviction Collateral Relief Act specifically provides that
[d]irect appeal shall be the principal means of reviewing all criminal convictions and sentences, and the purpose of this chapter is to provide prisoners with a procedure, limited in nature, to review those objections, defenses, claims, questions, issues or errors which in practical reality could not be or should not have been raised at trial or on direct appeal.

Miss.Code Ann. § 99-39-3(2) (Supp.2003) (emphasis supplied).
¶ 9. This Court is satisfied that each of Swindle's direct complaints regarding the manner in which he was sentenced could and should have been the subject of a direct appeal, and for his failure to take such an appeal, we conclude that those issues are barred from consideration in this post-conviction relief proceeding. Miss.Code Ann. § 99-39-21(1) (Supp.2003)

III.

Ineffective Assistance of Counsel
¶ 10. Nevertheless, different considerations arise when those same complaints in regard to Swindle's sentencing are viewed in light of his additional complaint that he was denied effective representation of counsel, at least during the sentencing phase of the circuit court proceedings. Such claims are subjected to a well-established two-prong test in which it must be shown that the defendant's performance was deficient and that the deficiency substantially deprived the defendant of a fair trial. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
¶ 11. Looking at Swindle's dissatisfaction with the manner in which he was sentenced from the standpoint of whether he was effectively represented by counsel, *285 we must (a) examine the various complaints raised by Swindle, (b) determine whether they would appear to have merit, and (c) consider whether defense counsel, in a reasonably vigorous defense of his client's rights, ought to have raised the issues contemporaneously, and, if so, (d) whether it is reasonable to conclude that a different result would, in all probability, have been obtained had he done so. We will, therefore, proceed to consider the various issues in that context.

A.

The Contents of the Impact Statement
¶ 12. One of the principal purposes of the victim impact statement is "to provide information to the court about the direct impact of the crime on the victim ..." in order to better aid the trial court in imposing "just punishment." Miss.Code Ann. § 99-19-153(Rev.2000). To that end, the relevant statute permits such a statement from the victim that is intended to provide "information about the financial, emotional and physical effects of the crime on the victim ... and... the circumstances surrounding the crime and the manner in which it was perpetrated." Miss.Code Ann. § 99-19-155(b)(Rev.2000) (emphasis supplied).
¶ 13. As an apparent safeguard against the improper use of a victim impact statement, the law requires that the statement be submitted at least forty-eight hours in advance of the sentencing date to the defendant and to the defendant's counsel. Miss.Code Ann. § 99-19-159(1)(Rev.2000).
¶ 14. In this case, there was no victim impact statement from either of the business entities where the checks were wrongfully negotiated by Swindle. Rather, the only victim impact statement was by Shelia Odom, on whose account the checks were written. In keeping within the confines of the statute, therefore, it would appear appropriate only for Odom to inform the court of the financial, emotional and physical effects on her of having two forged checks issued on her bank account. Instead, the victim impact statement recited as fact a number of allegations concerning threats of death or physical harm against Odom and her family allegedly made by Swindle ten years before the forgeries occurred. According to Odom's statement, these threats would be carried out "if she ever had anything to do with sending him [Swindle] to jail." Odom then professed to an ongoing fear for the lives of her children based on this alleged ten year old threat (not since renewed according to the contents of the statement) claiming that this fear arose immediately after Swindle issued the two forged checks and, thus, exposed himself to the possibility of a jail term.
¶ 15. This Court has serious reservations regarding the propriety of such information in a victim impact statement. It certainly far exceeds the limited purposes for which such statements may be offered as a part of the sentencing process as outlined in the applicable statute. The statute plainly limits the contents of the statement to matters relating to the direct impact of the crime itself on the victim and does not appear to condone the kind of open-ended accusations of other incidents of wrongful conduct by the defendant that are contained in Odom's statement.
¶ 16. The contents of the statement relating to alleged threats of harm to Odom and her family were emphasized at the sentencing hearing by the prosecuting attorney's remarks indicating that Odom was not going to appear to offer her statement in person "for obvious reasons after reading the victim impact statement."
¶ 17. It is unclear from the record whether the defendant and the defense counsel were furnished this wide-ranging *286 and potentially inflammatory victim impact statement forty-eight hours in advance as the statute required. It is entirely clear, however, that defense counsel did nothing to object to the introduction of the statement or  even assuming the propriety of such a statement  to offer any evidence to deny its accuracy or otherwise lessen its impact on the court's deliberation of an appropriate sentence.
¶ 18. This Court concludes that, in these circumstances, a reasonably competent attorney would find it necessary in the vigorous defense of his client's rights to make some effort to exclude or, at least, counteract such a damaging victim impact statement and that the failure to do so in this case falls below the standard of competence required by the Strickland decision. We take note that the trial court imposed what would appear to be an unusually lengthy sentence on the two bad check charges where the fraudulently issued checks totaled in the aggregate less than $700. In that circumstance, we are not convinced that the trial court would have seen fit to impose such severe punishment had defense counsel opposed the introduction of this somewhat inflammatory victim impact statement or, if that effort failed, presented evidence tending to blunt its impact. See, e.g., White v. State, 742 So.2d 1126, 1137 (¶ 46) (Miss.1999). For that reason, we find that, at a bare minimum, Swindle was entitled to a full evidentiary hearing on his motion to determine whether some appropriate post-conviction relief from his judgment of sentence was in order. The denial of that hearing was error requiring reversal.
¶ 19. In a motion for rehearing filed by the State, the Attorney General recites at some length from the statutory declaration of purpose behind the Victim Impact Statement Act (Miss.Code Ann. § 99-19-153 (Rev.2000)). The State then asserts that our conclusion that the Victim Impact Statement contained information appearing to exceed the permissible bounds laid out in the statute regarding the contents of the statement has the effect of limiting, rather than expanding, the information that the trial court may properly consider in assessing punishment. That assertion is patently incorrect. The decision does nothing to limit the gathering of pertinent information to be compiled into a presentence report for the trial court's enlightenment in determining appropriate sanctions against a convicted defendant. The statutory scheme giving birth to the victim impact statement makes clear that, in the normal course, the statement is but one part of the entire presentence evaluation report to be prepared by the presentence investigator. Miss.Code Ann. § 99-19-157(1)(Rev.2000). While it cannot be doubted that there are a wide-ranging number of factors that the trial court may consider in determining an appropriate measure of punishment, the fact remains that, under the clear pronouncements of the statute, a Victim Impact Statement can properly provide only a specifically limited portion of that relevant information that relates to
the financial, emotional and physical effects of the crime on the victim and the victim's family, and specific information about the victim, the circumstances surrounding the crime and the manner in which it was perpetrated.
Miss.Code Ann. § 99-19-155(b)(Rev.2000). Alleged ten year old death threats or threats of serious bodily injury, by any imaginable stretch, cannot be said to fall under "the circumstances surrounding the crime" of issuing two forged checks drawn on the victim's checking account.

B.

Improper Procedure
¶ 20. As we have observed, it is unclear from the present record whether Swindle *287 and his attorney were furnished Odom's statement forty-eight hours in advance of the sentencing hearing as required by the statute. Miss.Code Ann. § 99-19-159(1)(Rev.2000). As a result, we cannot say with certainty that a violation occurred nor, therefore, can we assess the impact of such a violation on Swindle's constitutional right to a fundamentally fair sentencing proceeding before the trial court.
¶ 21. Because we are reversing and remanding, it is enough to observe that, at such time as the matter of the admissibility and effect of this victim impact statement arises, after remand, we would expect that the notice requirements of the statute would be scrupulously followed.

C.

Consideration of Other Convictions in Sentencing
¶ 22. Apparently, the trial court obtained a presentence report on Swindle before imposing his sentence. That report is not a part of the record in the matter now before us. It cannot be doubted, however, that the contents of that statement had substantial effect on the trial court's decision to impose what appears on its face to be a rather severe punishment. In the order denying Swindle's post-conviction relief motion, the trial court spoke of Swindle's complaint regarding the severity of his sentence by saying, "[t]hat at the time [of entering his plea] the offender had a record which made him eligible to be sentenced pursuant to Section 99-19-83 to life without parole...."
¶ 23. No other reference to the existence of any such prior criminal record appears in the record. There was no effort to indict Swindle as an habitual offender. In his motion, Swindle asserts that he was actually acquitted of at least one prior crime "by a jury in another state...." It is impossible to assess the accuracy of that allegation by Swindle because of the lack of information as to what alleged prior conviction or convictions the trial court relied upon in its decision to impose such a lengthy sentence on Swindle. Again, we are satisfied that, if the presentence investigation revealed alleged prior criminal convictions that would tend to bear on the length of sentence to be imposed, defense counsel had some obligation to investigate the matter, especially in the circumstance where the defendant himself was protesting that at least one of the alleged convictions did not, in fact, occur.
¶ 24. Until a better record is created that includes evidence of those prior convictions apparently relied upon by the trial court, this Court cannot effectively evaluate the truthfulness of Swindle's allegation that he was, in fact, acquitted of at least one of the relevant crimes that would otherwise have potentially exposed him to the possibility of a life sentence. An effective effort at representation by counsel during the sentencing phase would have ensured that such evidence was in the record for appropriate review.

IV.

Final Consideration
¶ 25. In its brief, the State makes the point that Swindle does not directly attack the propriety of his fifteen year sentence on the larger check issued to Wal-Mart, but rather appears to limit his motion and his brief to a claim that the second fifteen year sentence (running consecutively) for issuing a bad check in the small amount of $49.82 was unreasonably harsh. Thus, the State argues, even were relief to be granted, it would be inappropriate to disturb the sentence imposed for the Wal-Mart check.
*288 ¶ 26. It is true that litigants appearing pro se are generally to be held to the same standard regarding pleadings and procedure as are those appearing through counsel. Dethlefs v. Beau Maison Dev. Corp., 511 So.2d 112, 118 (Miss.1987). Nevertheless, appellate courts are also admonished to pay special attention to the pleadings of pro se litigants to discover whether, though not pled with the clarity that might otherwise be expected, the litigant has raised issues that might have merit. Myers v. State, 583 So.2d 174, 176 (Miss.1991). In that light, we are satisfied that Swindle's motion effectively raises a justiciable claim that, at the sentencing phase of his proceeding in the circuit court, he received ineffective assistance of counsel that caused him to be sentenced in a more harsh manner than might otherwise have been the case. We are further satisfied that this claim can fairly be interpreted as extending to the purported harshness of the sentences in both of the forgery indictments, and we treat it accordingly.

V.

Conclusion
¶ 27. For the foregoing reasons, we conclude that the trial court in this instance erred in dismissing Swindle's motion summarily under authority of Section 99-39-11(2), solely insofar as Swindle's motion alleges ineffective assistance of counsel during the sentencing phase of his proceeding in the circuit court.
¶ 28. We, therefore, reverse and remand for such further proceedings on Swindle's motion as are appropriate under Section 99-39-11(3) and those following provisions of the Mississippi Uniform Post-Conviction Relief Act that dictate the course of the proceeding when such a motion cannot properly be summarily dismissed on its face. Those proceedings must specifically include the possibility, if warranted, of vacating the original sentences imposed in this case and reconsideration of more appropriate sentences in light of such further considerations as may arise from the evidence produced in the course of the proceeding on remand.
¶ 29. THE JUDGMENT OF THE CIRCUIT COURT OF PEARL RIVER COUNTY DENYING DARRELL SWINDLE'S MOTION FOR POST-CONVICTION RELIEF IS REVERSED AND THIS CAUSE IS REMANDED FOR SUCH FURTHER PROCEEDINGS UNDER THE MISSISSIPPI UNIFORM POST-CONVICTION RELIEF ACT AS ARE CONSISTENT WITH THE TERMS OF THIS OPINION. COSTS OF THE APPEAL ARE ASSESSED TO PEARL RIVER COUNTY.
KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS, AND CHANDLER, JJ., CONCUR. GRIFFIS, J., NOT PARTICIPATING.